UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    Case No. 19-20439

    HON. MARK A. GOLDSMITH

ROBERTO BALTAZAR-MARTINEZ,

    Defendant.
_____/

## ORDER GRANTING RELEASE WITH CONDITIONS

Roberto Baltazar-Martinez appeals a magistrate judge's order of detention. After considering the parties' arguments and submissions, the Court orders Baltazar-Martinez's release with conditions.

### I. BACKGROUND

On June 17, 2019, Baltazar-Martinez was arrested on a criminal complaint charging him with a single violation of 8 U.S.C. § 1326(a), illegal re-entry. See generally Compl. (Dkt. 1). At the initial appearance, the Government requested detention, citing, in part, the detainer lodged by Immigration and Customs Enforcement ("ICE").

Defense counsel filed an appearance the next day. Prior to the June 19, 2019 hearing, Baltazar-Martinez filed a motion with the magistrate judge arguing that a detention hearing was not proper where the Government has not and cannot satisfy the requirements of 18 U.S.C. § 3142(f). Nonetheless, the magistrate judge held a detention hearing, and concluded that Baltazar-Martinez was a serious flight risk and ordered his detention (Dkt. 10). Baltazar-Martinez appealed.

### II. LEGAL STANDARD

Title 18 U.S.C. § 3142 governs the release or detention of a federal defendant pending trial. In general, "[t]he default position of the law . . . is that a defendant should be released pending

1

trial." United States v. Stone, 608 F.3d 939, 945 (6th Cir. 2010). However, a defendant may be detained pending trial if a judge "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e).

In determining whether no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of the community, the Court must take into account the available information concerning: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant; and (iv) the nature and seriousness of the danger posed by the defendant's release. 18 U.S.C. § 3142(g). The Government bears the burden of persuasion and must prove risk of flight by a preponderance of the evidence. United States v. Hinton, 113 F. App'x 76, 77 (6th Cir. 2004); United States v. Namer, 238 F.3d 425 (6th Cir. 2000) (table). The Government does not argue that Baltazar-Martinez is a danger to the community.

### III. DISCUSSION

Baltazar-Martinez makes two arguments in support of his release. First, he argues that because the Government could not have satisfied the requirements of 18 U.S.C. § 3142(f), no detention hearing should have occurred in the first place. Second, Baltazar-Martinez argues that there are conditions that would reasonably assure his future appearance in court. The Court will take each argument in turn.

**A. The Government Has Satisfied § 3142(f)'s Requirements.**

Baltazar-Martinez argues that no detention hearing should have been conducted in the first place, because the Government cannot satisfy any of the requirements of § 3142(f). This argument is a nonstarter.

Section 3142(f) requires, in part, a judicial officer to hold a hearing to determine whether any condition or combination of conditions will reasonably assure the appearance of the defendant in court. Section 3142(f) has two sections, the first of which is inapplicable to the present case. Section 3142(f)(1) enumerates cases in which a rebuttable presumption arises in which no condition or combination of conditions will reasonably assure the appearance of the defendant. 18 U.S.C. § 3142(f)(1) & (e). Baltazar-Martinez's case does not fall under any of the § 3142(f)(1) provisions. Here, the Government moved for Baltazar-Martinez's detention under the second section of § 3142(f), specifically § 3142(f)(2)(A). That provision requires a judicial officer to hold a detention hearing "upon motion of the attorney for the Government or upon the judicial officer's own motion, in a case that involves – a serious risk that such person will flee."

There is no question that the magistrate judge followed the requirements of § 3142(f). The Government moved for detention arguing that Baltazar-Martinez is a serious flight risk. The magistrate judge subsequently held a detention hearing and made a flight-risk determination. This Court agrees with the magistrate judge that the Government is not required to make an evidentiary proffer before a detention hearing can even be set, and such a requirement is not supported by the statute. Accordingly, Baltazar-Martinez's first argument is without merit.

**B. The Government Has Not Shown that Baltazar-Martinez is a Serious Flight Risk.**

As to Baltazar-Martinez's second argument – that he is not a serious flight risk – the Court agrees that the Government has not shown by a preponderance of the evidence that there is no condition or combination of conditions to that would assure his appearance in court. Applying the Government's proffers to the factors set forth in 18 U.S.C. § 3142(g), the Court finds that there is a combination of conditions that will reasonably assure Baltazar-Martinez's appearance.

1. **Nature and Circumstances — 18 U.S.C. § 3142(g)(1)**

Turning to the first factor, the Court finds that it does not weigh in favor of detention. Title 18 U.S.C. § 3142(g)(1) states, in relevant part:

> (g) The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning —
>
> > (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device.

Here, it is alleged that Baltazar-Martinez made an unlawful re-entry after removal from the United States. Illegal re-entry does not constitute a crime of violence, a violation of section 1591, or a federal crime of terrorism. Nor does it involve a minor victim, controlled substances, firearms, explosives, or destructive devices. Baltazar-Martinez's crime is strictly related to his alleged illegal presence within the United States. The crime of illegal re-entry, without more, simply does not have any bearing on whether Baltazar-Martinez is a serious flight risk.

### 2. Weight of the Evidence; History and Characteristics — 18 U.S.C. §§ 3142(g)(2), (g)(3)

Title 18 U.S.C. § 3142(g)(2) instructs this Court to consider "the weight of the evidence against the person." This factor relates to "the weight of the evidence of dangerousness and risk of flight, not the weight of the evidence of the defendant's guilt." United States v Watson, No. 10-cr-30323, 2010 WL 3272934, at *3 (E.D. Mich. Aug. 12, 2010); see also United States v. Hazime, 762 F.2d 34, 37 (6th Cir. 1985) (explaining that the weight-of-evidence factor "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and safety of the community").

Section 3142(g)(3) requires the Court to consider the following:

> [T]he history and characteristics of the person, including —

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law . . . .

18 U.S.C. § 3142(g)(3).

The Court analyzes these factors in tandem, as many aspects of Baltazar-Martinez's history and characteristics will also evidence whether he is a flight risk.

To begin with, there are no qualms about Baltazar-Martinez's physical or mental condition. And although Baltazar-Martinez admitted to smoking marijuana occasionally, occasional marijuana use does not necessarily equate to drug abuse. The main contentions in this case relate to the ICE detainer and Baltazar-Martinez's ties to the area.

As to the ICE detainer, both parties argue that it supports their respective positions. The Court finds otherwise. With respect to the Government, what ICE may or may not do regarding Baltazar-Martinez's detention has no bearing on this Court's independent determination regarding flight risk. As to Baltazar-Martinez's argument that he will potentially be supervised by two federal agencies, the Court is not aware of any meaningful differences between Pretrial Services' and ICE's ability to supervise individuals released from custody. Whether Baltazar-Martinez is supervised by one or ten federal agencies is immaterial if the supervision capabilities are functionally equivalent.

As to Baltazar-Martinez's ties to the area, the Court finds that his ties are significant. He has lived in the United States for the past seventeen years, Pontiac for the last seven years, and in the same apartment for the last five years. His two American children live in Pontiac, ages 8 and

13, the eldest of which has advanced autism and requires individualized attention. Baltazar-Martinez says that he has a good relationship with the mother of his children and is active in his children's lives. He is also in a relationship with a woman in Pontiac, who has an adult son with a traumatic brain injury. Baltazar-Martinez assists with taking him to doctor's appointments and tends to his day-to-day needs.

The Government argues that Baltazar-Martinez's ties to the area are not significant enough considering that Baltazar-Martinez also has family in both California and Mexico, is not seeking asylum (and therefore has no fear of returning to Mexico), and can apparently cross the border when necessary. The Government also notes that Pretrial Services recommended detention. The magistrate judge agreed with the Government that this proffered evidence made Baltazar-Martinez a serious flight risk. This Court does not agree.

The Government does not dispute that Baltazar-Martinez has been in the United States for the past seventeen years, which tends to weaken the Government's argument that the family in Mexico would increase Baltazar-Martinez's risk of flight. Baltazar-Martinez's physical separation for seventeen years from any family in Mexico suggests that those family ties are somewhat less significant than his family ties in Pontiac. As to his siblings in California, Baltazar-Martinez chose to make his home in Pontiac with his children, rather than in California with his siblings. Baltazar-Martinez co-parents with the mother of his children and shoulders some of the responsibility of taking care of his child with autism. Additionally, he is in a relationship and helps care for her adult son who has a traumatic brain injury. These significant ties to family in Pontiac and the associated responsibilities suggests that Baltazar-Martinez is not a serious flight risk.

The Government also points out that Baltazar-Martinez concealed his identify when he entered the United States in 2002. But his relevant current conduct is of a different kind. When border patrol agents encountered Baltazar-Martinez in Pontiac on June 3, 2019, he "freely admitted

that he was illegally present in the United States after having been removed in February of 2002." Compl. ¶ 5 (quoting United States Border Patrol Agent Anthony H. Clyne). Baltazar-Martinez's honesty supports his assertion that he will cooperate in the proceedings against him and does not wish to compromise any attempt to gain lawful entry into the United States in the future. Indeed, he has hired an immigration attorney to assist him in that endeavor. Moreover, he is not facing a substantial custodial sentence. The criminal complaint alleges illegal re-entry in violation of 8 U.S.C. § 1326(a), which forbids a custodial sentence of greater than two years. Fleeing from a short custodial sentence, if any, and removal proceedings would severely hurt his chances of gaining lawful entry to the United States. Baltazar-Martinez's conduct also leads the Court to believe that he is not a flight risk.

Regarding Baltazar-Martinez's criminal history, he pleaded guilty to simple battery in 2007, for which he paid a $1.305 fine, served a six-day sentence, and was placed on twelve months of probation. He was also arrested three times in 2008 and 2009 for driving without a license. His criminal history is of little significance. Not only is Baltazar-Martinez's criminal history stale, there is no indication that he failed to meet any of the obligations that were imposed as a result of his 2007 conviction. Baltazar-Martinez's decade-old criminal history does not suggest that he is a flight risk.

As to Baltazar-Martinez's employment, he is self-employed as a home improvement contractor, specifically a drywall finisher. He earns enough money to meet his own needs and still manages to pay for some of his children's child care and school-related expenses. Contract construction work is not the most stable employment, but it is certainly not inconsequential. Drywall finishing, like any construction trade job, is aided by reputation and referrals. Baltazar-Martinez has been working as a drywall finisher for seven years. Even though he may ultimately

be removed from the United States, the time he can spend between now and that time working is likely to keep him tied to the area.[1]

Taken as a whole, these factors do not weigh in favor of detention.

### IV. CONCLUSION

This Court is satisfied there are conditions that will reasonably assure Baltazar-Martinez's appearance. Specifically, the Court will impose the following conditions: (1) he shall participate in electronic GPS monitoring; (2) his travel is restricted to the Eastern District of Michigan; (3) he shall report on a regular basis to U.S. Pretrial Services; (4) he shall refrain from the use of any controlled substance without a prescription; (5) he shall surrender any passport to U.S. Pretrial Services; and (6) he shall not obtain any travel documents without the express consent of U.S. Pretrial Services.

SO ORDERED.

Dated: July 12, 2019             s/Mark A. Goldsmith
    Detroit, Michigan              MARK A. GOLDSMITH
                                               United States District Judge

---

[1] The final § 1342(g) factor relates to the danger a defendant poses to any person or the community. The Government does not argue that Baltazar-Martinez is dangerous, therefore, the Court does not address this factor.